UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

RAJAT RAJAT,

     Petitioner,

v.

MARKWAYNE MULLIN, et al.,

     Respondents.

No. 6:26-CV-124-H

## ORDER

Rajat Rajat entered this country illegally three years ago without inspection.  The Fifth Circuit recently held that aliens like him are subject to mandatory detention. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).  While obliquely acknowledging *Buenrostro-Mendez*, Rajat says his case is different.  Why?  Because ICE paroled Rajat into this country in violation of the INA; therefore, he reasons, ICE must re-perpetrate its error by giving him another chance at a bond hearing, pursuant to the INA and the Due Process Clause.  *See* Dkt. No. 1.  He also demands a temporary restraining order fast-tracking him to relief.  Dkt. No. 2.

This novel claim does not hold up to scrutiny.  Nothing in the text of the INA suggests that aliens previously released under the discretionary-detention statute—in error— are entitled to a bond hearing at a later date when re-detained.  And the Due Process Clause's substantive and procedural protections do not afford Rajat the right to a bond hearing.

Because the legal arguments and facts presented in the petition are indistinguishable from those addressed in the Court's prior decisions denying relief, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus.

28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here. *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998). The petition (Dkt. No. 1) is denied, the TRO motion (Dkt. No. 2) is denied as moot, and counsel are advised to familiarize themselves with the requirements of Federal Rule of Civil Procedure 65.

### 1.    Background

Rajat is a native and citizen of India. Dkt. No. 1 at 5. Three years ago this week, he attempted to illegally enter the United States but was apprehended by immigration authorities. *Id.* at 5, 7. Authorities held him for two months, but ultimately released him on recognizance pursuant to Form I-220A. *Id.* at 7. "Form I-220A expressly states that the alien is being released pursuant to Section 1226" of the INA, which provides the Attorney General the discretion to grant release on bond or recognizance. *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418, at *7 (N.D. Tex. Jan. 15, 2026); 8 U.S.C. § 1226(a).

The petition is sparse on details, but Rajat remained in the United States for the short time that followed. *See* Dkt. No. 1 at 5. In January of this year, ICE re-detained Rajat while he was driving through Amarillo, Texas. *Id.* He was placed in detention without bond at the Eden Detention Center in Eden, Texas, where he remains in custody. *Id.* at 6. His petition does not indicate whether he has sought a bond hearing, but doing so would be futile. In *Matter of Yajure Hurtado*, the Board of Immigration Appeals held that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Last month, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. The Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)).

Rajat's petition states two claims for relief. First, he contends that, despite having entered the United States illegally, he is eligible for a bond hearing under Section 1226(a). Dkt. No. 1 at 7. He explains that DHS cannot "convert a completed [Section] 1226(a) release into [a Section] 1225(b) detention after the fact, as the statutory scheme does not permit retroactive reclassification to eliminate custody review." *Id.* Why the INA forbids that result, he does not say.[1] Second he contends that his ongoing detention without a bond hearing violates his procedural due process rights. *Id.* at 12.

## 2. Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

---

[1] While Rajat's petition only lists due process grounds as its basis, Rajat's extensive discussion of Form I-220A makes apparent that he asserts a statutory argument as well.

Const. art. I, § 9, cl. 2).  With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases.  *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).  Habeas exists solely to "grant relief from unlawful imprisonment or custody."  *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

### 3.    Analysis

As noted above, Rajat raises two claims—one involving Sections 1225 and 1226 of the INA, and another based on the Fifth Amendment's Due Process Clause.  As explained below, Rajat cannot avoid *Buenrostro-Mendez*'s reach by virtue of his Form I-220A.  The Court has also considered whether the Due Process Clause entitles illegal aliens to individualized bond hearings in numerous prior cases.[2]  Even so, the Court considers the arguments raised in Rajat's briefing to address whether his detention violates the INA or the Constitution.  On both counts, the answer is no.

### A.    Rajat is subject to mandatory detention under Section 1225.

First, Rajat's attempt to sidestep Section 1225 fails.  On his read, the INA prevents ICE from making a second determination about whether an alien is subject to Section 1225 or 1226.  Dkt. No. 1 at 7.  Despite his insistence on this point, he fails to cite a single line or

---

[2] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, 2026 WL 114418; *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

word from the INA that says as much.  He also fails to cite a single case supporting this position.

To evaluate the strength of his claim, the Court turns to the text of Sections 1225 and 1226, starting with the latter.  Under Section 1226, the Attorney General "may release [an] alien" on bond or on recognizance.  8 U.S.C. § 1226(a)(2).  After doing so, she "may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien."  *Id.* § 1226(b).  Next, Section 1225: "if [an] examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).

So, Section 1226(b) suggests the Attorney General has the power to revoke release; but the very power to do so requires, under subsection (a) and in light of Section 1225(b), the power to grant release in the first place.  This is, in other words, an argument from prosecutorial discretion.  However, "the fact 'that prior Administrations decided to use less than their full enforcement authority . . . does not mean [that] they lacked the authority to do more."  *Uulu v. Warden*, ___ F. Supp. 3d ___, No. 1:25-CV-1812, 2026 WL 412204, at *6 (E.D. Cal. Feb. 13, 2026) (quoting *Buenrostro-Mendez*, 166 F.4th at 506).  As this Court previously explained, Rajat is not entitled to "turn back the clock to a time when such relief was available as a matter of practice."  *Goyo Martinez*, 2026 WL 114418, at *7 (citation modified).

All that remains, then, is to determine the nature of Rajat's immigration status.  He concedes that he was placed in removal proceedings on the ground that he entered without admission or parole.  Dkt. No. 1 at 7; *see* 8 U.S.C. § 1182(a)(6)(A)(i).  Thus, he is "[a]n alien

– 5 –

present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). That

makes him "an applicant for admission," *id.*, and, as an applicant for admission, binding

Fifth Circuit precedent requires that he be detained without bond under Section

1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498. Thus, Rajat's INA claim fails.[3]

**B.      The Due Process Clause does not require the government to give Rajat a bond hearing.**

Next is Rajat's claim that the government's refusal to provide a bond hearing violates

the Due Process Clause of the Fifth Amendment. Dkt. No. 1 at 12. Because

*Buenrostro-Mendez* did not directly address this question, the Court turns to Rajat's

arguments. His petition raises procedural due process grounds, *see id.*, but to the extent he

seeks relief on substantive due process grounds, the Court addresses that contention as well.

Either way, he is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental

rights and liberties which are, objectively, deeply rooted in this Nation's history and

tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v.

Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for

aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the

Supreme Court has long affirmed the constitutionality of executive immigration procedures.

The "through line of history," the Supreme Court recently explained, is "recognition of the

Government's sovereign authority to set the terms governing the admission and exclusion of

---

[3] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.2. Moreover, release into the country on Form I-220A is not a form of admission. *See Goyo Martinez*, 2026 WL 114418, at *3–4, 7.

noncitizens." *Muñoz*, 602 U.S. at 911–12.  To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention.  In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process."  *Id.*  Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Id.* at 528.  It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."  *Id.* at 526.  Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better.  As an "applicant for admission," Rajat has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").

Despite this, Rajat relies on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976).  Dkt. Nos. 1 at 10–11; 2 at 3.  The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges.  The Supreme Court said as

much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *Thuraissigiam*, 591 U.S. at 138–39 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted). Critically, aliens who are released into the United States pending removal "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(d)(5)(A) (noting that paroled aliens are not admitted and are "dealt with in the same manner as that of any other applicant for admission to the United States"); 8 C.F.R. § 1.2 (same).

With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission.  "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).  No part of the statute "says anything whatsoever about bond hearings." *Id.*  Accordingly, Rajat is not entitled to a bond hearing as a matter of procedural due process.[4]

### C.    Counsel are advised to review the requirements for a TRO.

Because the Court denies the habeas petition (Dkt. No. 1), Rajat's TRO motion (Dkt. No. 2) is moot.  However, the Court takes this opportunity to remind counsel of the role and purpose of a TRO motion.  "The purpose of a preliminary injunction is to preserve the *status quo* and prevent irreparable injury until the court renders a decision on the merits." *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *4 (5th Cir. Feb. 17, 2022) (citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974)).  Likewise, the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).  The notion of preserving the status quo is reflected in the name of the motion—i.e., it *restrains* a party—and in the TRO's requirement of an "immediate and irreparable injury, loss, or damage" that will result absent the injunction.  Fed. R. Civ. P. 65(b)(1)(A); *see Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

---

[4] For these reasons, to the extent Rajat argues that his erroneous release under Section 1226 "created a constitutionally protected liberty interest" (Dkt. No. 2 at 3), he is incorrect.

For that reason, it is well established that "a motion or application for a TRO or preliminary injunction is properly denied when it is no more than a 'motion to win.'" *Perez v. Noem*, No. 3:25-CV-2920, 2025 WL 3532430, at *6 (N.D. Tex. Nov. 14, 2025), *R. & R. adopted*, 2025 WL 3530951 (Dec. 9, 2025). Even in the preliminary injunction context, it is "generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits," and doing so requires "clear and unambiguous notice of the court's intent" to convert a preliminary motion into final relief. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395–96 (1981) (quotation omitted). A TRO motion is more severe because it is so accelerated that the order may issue "without written or oral notice to the adverse party." Fed. R. Civ. P. 65(b).

Because Rajat's TRO motion seeks release or a bond hearing—the same relief sought in his petition—his TRO motion improperly seeks ultimate relief. That is "something courts do not do in TROs." *Saechao v. Noem*, No. 3:26-CV-624, 2026 WL 602783, at *2 (N.D. Tex. Mar. 4, 2026) (Starr, J.). No court in the Northern District of Texas has done so. *See id.* Amid a flood of habeas filings seeking relief on identical grounds, TRO motions like Rajat's require one of two things: (1) entering an order denying the frivolous motion, which wastes judicial resources; or (2) issuing a final merits judgment on an accelerated timeline, which is unfair to those petitioners who are seeking identical relief, have had motions pending for a greater amount of time, and have filed no TRO motion. Accordingly, counsel are advised to review the requirements for TROs under Rule 65 and applicable caselaw. Future frivolous TRO motions may result in an order to show cause why sanctions should not be imposed.

**4.    Conclusion**

In short, Rajat, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A).  *Buenrostro-Mendez*, 166 F.4th at 498.  And the Due Process Clause does not require a bond hearing in these circumstances.  Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.  Rajat's TRO motion (Dkt. No. 2) is denied as moot.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on March 26, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE